UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHERINE A. KONKLE,

        Plaintiff,

v.                                                    Case No. 8:24-cv-1493-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

        Defendant.

## OPINION AND ORDER[2]

### I.  Status

Katherine A. Konkle ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of multiple joint pain (including back and hips), arthritis, neuropathy, bone spurs, fibromyalgia, gout, knee issues, asthma, and high blood pressure. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative

---

[1] Frank Bisignano was recently confirmed as the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

transcript"), filed August 22, 2024, at 79, 89, 254. Plaintiff protectively filed an application for DIB on December 30, 2020, alleging a disability onset date of October 1, 2020.[3] Tr. at 203-09. The application was denied initially, Tr. at 78, 79-87, 103-06, and upon reconsideration, Tr. at 88, 89-96, 114-16.[4]

On July 6, 2023, an Administrative Law Judge ("ALJ") held a hearing,[5] during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 30-67. On September 26, 2023, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 11-23.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her lawyer. See Tr. at 5-6 (Appeals Council exhibit list and order), 197-98 (request for review and cover letter), 199-201 (brief). On April 26, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On June 20, 2024, Plaintiff commenced this action under 42

---

[3] Although actually completed on January 21, 2021, see Tr. at 203, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as December 30, 2020, see, e.g., Tr. at 79, 89.

[4] Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5] The hearing was held via telephone with Plaintiff's consent. See Tr. at 32, 141-42, 183-84.

U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues "[t]he ALJ erred by failing to account for the 'total limiting effects' of Plaintiff's impairments by not properly evaluating her self-descripted limitations and the medical opinion evidence from her treating rheumatologist"; and in particular "fail[ing] to apply, or even mention, SSR 12-2p, the binding SSA ruling regarding the evaluation of fibromyalgia." Plaintiff's Brief – Social Security (Doc. No. 13; "Pl.'s Br."), filed September 19, 2024, at 1 (emphasis omitted); see id. at 3-18. On October 17, 2024, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 15; "Def.'s Mem.") addressing Plaintiff's argument. Then, on October 30, 2024, Plaintiff's Reply Brief – Social Security (Doc. No. 16; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

(Continued…)

- 3 -

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry through step four, where she ended the inquiry based on her findings at that step. See Tr. at 13-23. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since October 1, 2020, the alleged onset date." Tr. at 13 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia, degenerative disc disease, hypertension, irritable bowel syndrome, neuropathy, rheumatoid arthritis, lumbar radiculopathy, obesity, migraines, and attention deficit and hyperactivity disorder (ADHD)." Tr. at 14 (emphasis and citation omitted). At step three, the

---

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 14 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except she can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. She can occasionally kneel, and crouch, but never crawl. She can frequently stoop. She should avoid concentrated exposure to extreme cold, heat, atmospheric conditions, and hazards. She is able to maintain attention, concentration, and pace for two-hour increments in an eight-hour workday. She requires the use of a cane as needed.

Tr. at 17 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is capable of performing past relevant work" as a "salesperson, furniture" and a "salesperson, parts." Tr. at 22-23 (some emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from October 1, 2020, through the date of th[e D]ecision." Tr. at 23 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported

by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff, focusing on her fibromyalgia diagnosis, contends the ALJ erred in assessing her subjective symptoms and evaluating the opinion of treating rheumatologist David Baldinger, M.D. Pl.'s Br. at 3-18; Reply at 1-5. Plaintiff

also contends the ALJ did not evaluate her fibromyalgia pursuant to Social Security Ruling 12-2p. Pl.'s Br. at 13-18. Responding, Defendant argues the ALJ properly evaluated both the subjective symptoms and Dr. Baldinger's opinion, despite not specifically referring to SSR 12-2p. Def.'s Mem. at 5-18.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other

>>factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869.[7] A "hallmark" of fibromyalgia is "a lack of objective evidence" such as "medical or laboratory signs" with which to make a diagnosis. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). The impairment is "generally diagnosed mostly on an individual's described symptoms." Id. "Particularly related to fibromyalgia, SSR 12-2p "provides guidance on how the [Administration] develops evidence that a person has a medically determinable impairment of fibromyalgia and how it

---

[7] Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations that [the Administration has] adopted." 20 C.F.R. § 402.35(b)(1).

evaluates fibromyalgia in disability claims." Sorter v. Soc. Sec. Admin., Comm'r, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing SSR 12-2p, 2012 WL 3104869).

There are two main ways set forth in SSR 12-2p for evaluating whether fibromyalgia is a medically determinable impairment. The first way requires a claimant to have "[a] history of widespread pain" that "may fluctuate in intensity and may not always be present," as well as "[a]t least 11 positive tender points on physical examination" with various requirements; and finally, "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p. The second way requires "[a] history of widespread pain"; "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." Id.

Once an ALJ determines that a claimant has the medically-determinable impairment of fibromyalgia, the ALJ proceeds with a symptom-evaluation process. Id. "If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Administration is to] consider all of the evidence in the case

record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms." Id.

Then, the fibromyalgia impairment is included in the five-step sequential evaluation process as with other impairments. Id. Importantly, when an ALJ is considering the RFC, SSR 12-2p directs that "for a person with [fibromyalgia,] we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" Id.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245,

1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources").

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R.

§§ 404.1520c(a), 416.920c(a).[8] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same,

---

[8] Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

- 12 -

[the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[9]

Here, Plaintiff's rheumatology records do reflect a fibromyalgia diagnosis, but most of the relevant evidence emphasizes for treatment and prescription purposes the impairments of lumbar radiculopathy and rheumatoid arthritis. Tr. at 506-55, 611-15, 1281-1360, 1382-92, 1405-13. On June 21, 2023, Plaintiff's treating rheumatologist, Dr. Baldinger, completed a fibromyalgia residual functional questionnaire in which he indicated Plaintiff meets the American Rheumatological criteria for fibromyalgia, and her other diagnosed impairment is rheumatoid arthritis. Tr. at 1415-18. According to Dr. Baldinger, Plaintiff suffers from pain all over that is "moderate to very severe." Tr. at 1416. Precipitating factors include changing weather, stress, humidity, fatigue, static position, movement/overuse, and cold. Tr. at 1416. Plaintiff's pain would constantly interfere with her attention and concentration. Tr. at 1416. Dr. Baldinger assigned functional limitations that would preclude all work and indicated Plaintiff could be expected to be absent from work more than three times per month. Tr. at 1416-18.

---

[9] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

In the Decision, regarding the fibromyalgia, the ALJ found it to be a severe impairment at step two and discussed its effects throughout the Decision. Tr. at 14-23. Overall, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 18. In support, the ALJ first discussed the objective medical evidence and found "medications have been relatively effective in controlling [Plaintiff's] symptoms." Tr. at 18; see Tr. at 18-21. The ALJ also found that "physical and mental examinations demonstrate greater functioning than [Plaintiff] alleges." Tr. at 18. Second, the ALJ relied on Plaintiff's "many reportedly intact activities of daily living." Tr. at 18.

Regarding Dr. Baldinger's opinion, the ALJ wrote it was:

> unpersuasive as it is fairly extreme and inconsistent with the evidence documenting many normal findings on physical examination, such as normal gait and stance, no tenderness or weakness in her extremities, and normal range of motion in her joints and spine. However, the record did show some occasional evidence of abnormal findings, including tenderness in the wrists, hands, and knees, pain with motion and gripping, reduced sensation in the right lower extremity, positive Romberg sign, positive straight leg raise at 45 degrees. Dr. Baldinger's opinion is not supported by specific diagnostic findings from the

>    record documenting the limitation, instead, he cited
>    general symptoms.

Tr. at 21 (citations omitted).

The ALJ did not commit reversible error. Although it is accurate that the ALJ did not cite SSR 12-2p, the ALJ's findings make clear that she sufficiently abided by its dictates. The ALJ's Decision reflects thoughtful consideration of the fibromyalgia diagnosis and its effects, together with the rest of the symptoms from which Plaintiff suffers. See Tr. at 18-21. Importantly, although the ALJ referred to "objective medical evidence" in discussing the symptomology from which Plaintiff alleges she suffers, Tr. at 18, the ALJ not only discussed examination findings but also that "medications have been relatively effective in controlling [Plaintiff's] symptoms," Tr. at 18, a finding that is supported by substantial evidence, see Tr. at 506-55, 611-15, 1281-1360, 1382-92, 1405-13. Even more importantly, the ALJ relied on "many reportedly intact activities of daily living," Tr. at 18, which the rheumatology records consistently document, see 506-55, 611-15, 1281-1360, 1382-92, 1405-13.

In addressing Dr. Baldinger's opinion, the ALJ relied to a degree on Plaintiff's examination findings, while recognizing that some findings were abnormal from time to time. Tr. at 21. But, the ALJ also found that Dr. Baldinger's opinion was "not supported by specific diagnostic findings from the record documenting the limitation," with the doctor instead citing "general

- 15 -

symptoms." Tr. at 21. Comparing the symptoms that Dr. Baldinger alleged in the opinion with the actual symptoms documented in the treatment notes shows that Dr. Baldinger's opinion was based upon symptomology that Plaintiff consistently reported was not happening. Compare Tr. at 1418 (symptoms checked on opinion), with Tr. at 506-55, 611-15, 1281-1360, 1382-92, 1405-13 (Plaintiff's denial of many of the same symptoms). Overall, the ALJ's reasons for finding Dr. Baldinger's opinion unpersuasive are supported by substantial evidence.

## V. Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 29, 2025.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record